OPINION
{¶ 1} Defendant-appellant Christopher Giles appeals from his conviction of burglary entered in the Columbiana County Common Pleas Court after a jury trial. Appellant alleges plain error in the admission of evidence which implied that he has a prior conviction. Appellant also alleges that his conviction is against the manifest weight of the evidence. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} Appellant was indicted for burglary in violation of R.C. 2911.12(A)(1), a second degree felony, which entails trespassing in an occupied structure by force, stealth, or deception when another is present with purpose to commit a criminal offense therein. More specifically, he was accused of entering the home of Gerald Beiling in Salem in the middle of the night and stealing numerous items.
 {¶ 3} The case was tried to the jury on September 29, 2003. Testimony established that the victim's house was entered sometime after midnight on February 27, 2003. The property stolen included: two televisions, two VCRs, a DVD player, a Playstation, a Nintendo, video games, toys, model cars, a fishing tackle box, a coat, clothes, keys, a check book, credit cards, power tools, and crystal candlesticks. (Tr. 143-145, 147-148, 151). Two of the victim's rakes were found in the snow and had apparently been used to eliminate two sets of footprints. (Tr. 156, 186). The victim opined that his grandson's cousin, Brian Reynolds, participated in the burglary. (Tr. 139).
 {¶ 4} Thereafter, the girlfriend of Mr. Reynolds gave police consent to search her house. Officers found Mr. Reynolds hiding in the attic with two bags of stolen property. (Tr. 171, 173). His girlfriend testified that Mr. Reynolds and appellant went to shoot pool around midnight on the night of the burglary. She noted that she called Mr. Reynolds on a cellular phone at 3:30 a.m. and that his phone was answered by appellant. (Tr. 146).
 {¶ 5} Appellant's girlfriend also gave police consent to search her residence. They only discovered a fishing swivel lure near the front door. (Tr. 214). However, they found multiple items of stolen property in the dumpster behind the apartment building. (Tr. 215). Appellant admitted that he shot pool with Mr. Reynolds that night. In his first statement, he stated that he went to his girlfriend's around 2:30 a.m., that Mr. Reynolds called at 5:00 a.m., and that his girlfriend informed Mr. Reynolds he was sleeping. (Tr. 224). In his second statement, appellant admitted that his fingerprints would be found on some stolen items because Mr. Reynolds arrived at appellant's girlfriend's house at 5:00 a.m. with a box of stolen items. He stated that his girlfriend told Mr. Reynolds to leave so he helped Mr. Reynolds load the items back into his car. (Tr. 232).
 {¶ 6} Appellant's girlfriend testified that appellant left with Mr. Reynolds to shoot pool and that he was not home by 3:00 a.m. when she went to sleep. She stated that appellant called her at 4:30 a.m. and said he would be home soon. (Tr. 254). Then, appellant and Mr. Reynolds knocked on her door around 5:30 a.m. They told her they went to an acquaintance's house, but he was not there so they "helped themselves." (Tr. 256). She saw a television, a VCR, a Playstation, a Nintendo, and video games. She refused to let them bring the items into her house. (Tr. 257).
 {¶ 7} Appellant's girlfriend admitted that she initially confirmed his first two statements. Later, when she testified before the grand jury, she changed her story to the current one that incriminates appellant. She testified that her prior statements were lies and that she changed her story in order to avoid prosecution for perjury. (Tr. 262, 265). In order to bolster her claim that her prior statements were lies and in order to incriminate appellant with his own statements, the state submitted Exhibit 19A, which is a letter that appellant wrote to his girlfriend from jail. (Tr. 267).
 {¶ 8} In the letter, appellant detailed his version of the night's events, outlining the specific times that he arrived at his girlfriend's house and that Mr. Reynolds arrived alone later. Besides giving his version of the sequence of events and times, he even coached:
 {¶ 9} "I stay at your house on occasion. You are my girlfriend. We met through your mother. That night when Brian dropped me off around 2:30 a.m. I had been drinking because I kissed you, but didn't seem to be drunk. I rarely drink, you disapprove of it."
 {¶ 10} Appellant later instructed his girlfriend:
 {¶ 11} "This is going to be rough. Please memori[z]e what happened babe and no matter what anyone tells you or says I said don't change it. That's what happened 100% No changes ever
stick w/it * * *."
 {¶ 12} He also disclosed: "I just got into a fight with my mom, because I told her I didn't do it. She was like Melissa told me the truth when I first talked to her, Baby it doesn't matter. I just have to see if they even charge me."
 {¶ 13} Appellant did not object to the presentation of the letter or its admission into evidence. He presented no evidence in his defense. The jury found him guilty as charged, and the court sentenced him to six years in prison. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 14} Appellant's first assignment of error contends:
 {¶ 15} "The lower court erred by allowing testimony concerning the prior convictions and other bad acts of the Defendant, Christopher Giles, into evidence."
 {¶ 16} Besides the incriminating and witness-prompting statements appellant made as outlined above, the letter appellant wrote to his girlfriend from jail also contained statements referring to a parole officer, violation, and hearing. The letter also mentioned that he had written letters from jail in the past and had those letters used against him in a prior case. Appellant's girlfriend was questioned about these parts of the letter as follows:
 {¶ 17} "Q. * * * My P.O. came today, and by P.O., what does he mean?
 {¶ 18} "A. Parole officer.
 {¶ 19} "Q. He says my parole officer came today, my hearing will be in a few weeks. `You'll be a witness,' it says. * * *" (Tr. 270).
 {¶ 20} "Q. * * * He goes to write after that, he writes, I'm only here for the parole violation as of now. Last time I wrote a letter like this it was received by the prosecutor. Yep, I got snitched on, baby." (Tr. 275).
 {¶ 21} Thus, the jury was basically informed that appellant had a prior conviction. As aforementioned, appellant did not object to the testimony regarding these portions of the letter; nor did he object when the prosecutor later moved to admit the letter. (Tr. 282). Appellant now states that the letter should have been excluded or at least redacted so that it did not mention events that would lead one to conclude that he had a prior conviction.
 {¶ 22} First, he notes that relevant evidence should be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, citing Evid. R. 403. He then cites Evid. R. 404(A)(1) and states that character evidence of the accused is generally inadmissible and that the rebuttal exception is inapplicable.
 {¶ 23} He also cites Evid. R. 404(B), which provides that evidence of other crimes, wrongs, or acts is generally inadmissible to prove character to show that one acted in conformity therewith. He points out that none of the exceptions to that rule apply; that is, motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. He also notes that he did not take the stand, so he was not subject to impeachment with evidence of conviction of a felony or crime of dishonesty, citing Evid. R. 609.
 {¶ 24} Appellant concedes his failure to object but argues that admission of the unredacted letter was plain error. The state counters that the disputed statements only constituted a small portion of the letter and that the plain error doctrine is inapplicable because there was plenty of other evidence introduced at trial to convince the jury that appellant committed the burglary.
 {¶ 25} Crim. R. 52(B) provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v.Wogenstahl (1996), 75 Ohio St.3d 344, 357. To reverse on plain error, the appellate court must find that the error was plain and outcome-determinative and that recognition of the error is required to prevent a manifest miscarriage of justice under the exceptional circumstances of the case. State v. Fenwick (2001),91 Ohio St.3d 1252, 1254.
 {¶ 26} Here, there was a plethora of evidence establishing appellant's participation in the burglary. Evidence established that two people committed the burglary. Stolen items were found with Mr. Reynolds, who was a distrusted associate of the victim. Appellant admitted he was with Mr. Reynolds on the night of the burglary. He claims that he left the company of Mr. Reynolds at 2:30 a.m. Yet, testimony established appellant answered the cell phone for Mr. Reynolds at 3:30 a.m.
 {¶ 27} Furthermore, appellant's girlfriend testified that he admitted to the burglary. She stated that appellant and Mr. Reynolds came to her house with the stolen items at 5:30 a.m. The stolen items that were not discovered with Mr. Reynolds were found in the dumpster behind appellant's girlfriend's apartment. When asked if these items would contain his fingerprints, appellant admitted to touching many of the stolen items.
 {¶ 28} Moreover, the veracity of appellant's story was severely diminished by the inferences that could be reasonably drawn from the clearly relevant and admissible portions of the letter. Appellant's incriminating statements unrelated to his prior offense would not have been redacted as they constituted admissions by a party opponent under Evid. R. 801(D)(2)(a) and they were highly relevant to the veracity of his story to police and to the credibility of his girlfriend's changing story. We also note that the mention of parole involved appellant's own admission rather than hearsay as is often the case in these types of scenarios.
 {¶ 29} Considering all of this evidence, appellant's mention of parole and (thus suggestion of some unnamed of prior offense) in his letter are not clearly outcomedeterminative. The failure of the trial court to sua sponte redact the portions of the letter implying that appellant had a prior conviction was not plain error.
 {¶ 30} Moreover, Crim. R. 52 allows us to take corrective action, but it does not require us to do so. State v. Viers,
7th Dist. No. 01JE19, 2003-Ohio-3483, at ¶ 48. Notice of plain error can be only taken with the utmost caution under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 94-95. Exceptional circumstances do not exist in this case.
 {¶ 31} This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 32} Appellant's second assignment of error alleges:
 {¶ 33} "The conviction of the defendant, Christopher Giles, was against the manifest weight of the evidence."
 {¶ 34} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Reversing based on a determination that the verdict is against the manifest weight of the evidence requires this court to sit as the "thirteenth juror," which we are not permitted to do unless a unanimous panel is satisfied that the true jury clearly lost its way and created a manifest miscarriage of justice. Id. at 387, 389.
 {¶ 35} When there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we leave it to the jury to choose which version to believe. State v. Gore (1999), 131 Ohio App.3d 197, 201. The jury is able to view the demeanor, voice inflections, and gestures of the witnesses testifying before it. Seasons Coal Co.v. Cleveland (1994), 10 Ohio St.3d 77, 80. Hence, the jury is in the best position to weigh the evidence and judge the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 36} After reading the trial transcript, a review of which is set forth in our statement of facts and the prior assignment of error, we refuse to sit as the "thirteenth juror" who claims that the jury clearly lost its way and created a manifest miscarriage of justice. The circumstantial evidence is suggestive, and the testimony of appellant's girlfriend is reasonably believable. Accordingly, this assignment of error is overruled.
 {¶ 37} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs., DeGenaro, J., concurs.